**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

IN RE SYNCHRONY FINANCIAL
SECURITIES LITIGATION

No. 3:18-cv-1818-VAB

**RULING AND ORDER APPROVING**
**CLASS ACTION SETTLEMENT, APPROVING PLAN OF ALLOCATION, AND**
**APPROVING APPLICATION FOR ATTORNEY'S FEES AND COSTS**

This consolidated securities class action is pending in this Court entitled *In re:*

*Synchrony Financial Securities Litigation*, No. 3:18-cv-1818 (the "Action").[1]

In a Ruling and Order dated February 3, 2023, the Court certified the Action to proceed

as a class action on behalf of all persons or entities who purchased or otherwise acquired the

common stock of Synchrony Financial ("Synchrony") during the period from January 19, 2018,

through July 12, 2018, inclusive (the "Class Period"), and who were damaged (the "Class" or

"Class Members").[2]

Lead Plaintiff Stichting Depositary APG Developed Markets Equity Pool ("Lead

Plaintiff" or "APG") and Plaintiff Stichting Depositary APG Fixed Income Credits Pool

(collectively with Lead Plaintiff, "Plaintiffs"), on behalf of themselves and the Class; and

---

[1] Unless otherwise defined in this Ruling and Order, the capitalized terms herein shall have the same meaning as they have in the Stipulation.

[2] Excluded from the Class are: (i) Defendants; (ii) the Former Individual Defendants; (iii) the Former Underwriter Defendants; (iv) Immediate Family Members of any Individual Defendant or any Former Individual Defendant; (v) any person who was an Officer or director of Synchrony or any of the Former Underwriter Defendants during the Class Period and any of their Immediate Family Members; (vi) any parent, subsidiary, or affiliate of Synchrony or any of the Former Underwriter Defendants; (vii) any firm, trust, corporation, or other entity in which any Defendant, Former Defendant, or any other excluded person or entity has, or had during the Class Period, a controlling interest; and (viii) the legal representatives, agents, affiliates, heirs, successors-in-interest or assigns of any such excluded persons or entities. Also excluded from the Class are the persons noted below, who have validly opted-out of the Settlement.

Defendants Synchrony Financial ("Synchrony" or the "Company"), Margaret M. Keane ("Keane"), Brian D. Doubles ("Doubles"), and Thomas M. Quindlen ("Quindlen" and together with Synchrony, Keane, and Doubles, "Defendants") have entered into a Stipulation and Agreement of Settlement dated April 3, 2023 (the "Stipulation"), that provides for a complete dismissal with prejudice of the claims asserted in the Action on the terms and conditions set forth in the Stipulation, subject to the approval of this Court (the "Settlement").

The Parties seek approval of the Settlement and the Plan of Allocation.

Plaintiffs' Counsel[3] seek approval of an award of attorneys' fees equal to thirteen percent of the Settlement Fund, payment of $566,401.13 in Litigation Expenses to Plaintiffs' Counsel, and $46,700 for costs incurred by Plaintiffs directly related to their representation of the Class.

On July 6, 2023, Marilyn Wheeler ("Ms. Wheeler") filed the only objection to the Settlement.

Upon reviewing the Stipulation and all of the filings, and following proceedings held in connection with the Settlement, including a fairness hearing held on July 31, 2023, the Court **GRANTS** the motion for final approval of the settlement and plan of allocation and **GRANTS** the motion for attorney's fees and expenses. The Court **FINDS, CONCLUDES,** and **ORDERS** as follows.

## I.    BACKGROUND

On February 5, 2019, the Court appointed Stichting Depositary APG Developed Markets Equity Pool as the Lead Plaintiff and approved BLB&G as Lead Counsel for the proposed class.

---

[3] Plaintiff's Counsel includes both Lead Counsel, Bernstein Litowitz Berger & Grossmann LLP ("BLB&G") and Motley Rice LLC ("Motley Rice").

*See* Ruling and Order on Mots. to Appoint Lead Plaintiff and Lead Counsel, ECF No. 59 ("Order Appointing Lead Pl.").

On June 24, 2022, Plaintiffs filed a motion to certify a class, a memorandum of law in support, and a declaration from Adam H. Wierzbowski with supporting documents including a study done by Dr. Steven Feinstein ("Dr. Feinstein"). *See* Pls.' Mot. for Class Certification and Appt. of Class Representative and Class Counsel, ECF No. 187; Mem. of Law in Supp. of Pls.' Mot. for Class Certification, ECF No. 188; Decl. of Adam H. Wierzbowski in Supp. of Pls.' Mot. for Class Certification, ECF No. 189.

On February 3, 2023, the Court issued a Ruling and Order granting the motion to certify the class and appointing Lead Plaintiff as Class Representative. Ruling and Order on Mot. to Certify Class, ECF No. 231 ("Ruling on Class Cert.").

On April 7, 2023, Lead Plaintiff filed a motion for preliminary settlement approval. Mot. for Settlement, ECF No. 232.

On April 12, 2023, the Court granted the motion for preliminary settlement approval and: (a) found, under Rule 23(e)(1)(B), that it would likely be able to approve the Settlement as fair, reasonable, and adequate under Rule 23(e)(2); (b) ordered that notice of the proposed Settlement be provided to potential Class Members; (c) provided Class Members with the opportunity either to exclude themselves from the Class or to object to the proposed Settlement; and (d) scheduled a hearing regarding final approval of the Settlement. Order Granting Preliminary Settlement Approval, ECF No. 233 ("Preliminary Approval Order").

On or about April 12 and 13, 2023, counsel for Defendants, under the Class Action Fairness Act, 28 U.S.C. § 1715 ("CAFA"), sent notices to the appropriate federal and state officials. Cert. of Serv., ECF No. 235.

On May 5, 2023, the Court-approved Claims Administrator, Epiq, began mailing copies of the Notice Packet to potential Class Members. *See* Ex. 2 to Mot. to Approve Settlement ¶¶ 3–4, ECF No. 240-2 ("Villanova Decl."). Beginning on May 5, 2023, copies of the Notice, Claim Form, Stipulation, Preliminary Approval Order, and Complaint were made available on the settlement website maintained by Epiq. *See id.* ¶ 12. On May 22, 2023, Epiq caused the Summary Notice to be published in *The Wall Street Journal* and *Investor's Business Daily*. *See id.* ¶ 8. As of June 23, 2023, Epiq had disseminated 156,117 copies of the Notice Packet to potential Class Members and nominees. *See id.* ¶ 7.

On June 26, 2023, Lead Plaintiff filed a motion for final approval of the Settlement and Plan of Allocation. Mot. for Final Approval of Class Action Settlement & Plan of Allocation, ECF No. 236; Mem. in Supp. of Mot. for Final Approval, ECF No. 237 ("Mot. to Approve Settlement").

On June 26, 2023, Class Counsel filed a motion for attorney fees and litigation expenses. Mot. for Attorney Fees & Litig. Expenses, ECF No. 238; Mem. in Supp. of Mot. for Attorney Fees & Litig. Expenses, ECF No. 239 ("Mot. for Att'y's Fees").

On July 6, 2023, Ms. Wheeler filed the only objection to the proposed Settlement. Ex. 2 to Reply, ECF No. 241-2 ("Wheeler Obj.").

On July 24, 2023, Lead Plaintiffs filed a reply in support of their motion for final approval of the Settlement and motion for attorney fees and litigation expenses. Reply to Resp. to Mot. for Att'y's Fees & Litig. Expenses & Mot. for Final Approval, ECF No. 241 ("Reply").

On July 31, 2023, the Court conducted a hearing (the "Settlement Hearing") to consider, among other things, (a) whether the terms and conditions of the Settlement are fair, reasonable, and adequate to the Class, and should therefore be approved; and (b) whether a judgment

should be entered dismissing the Action with prejudice as against the Defendants.

This Ruling and Order incorporates and makes a part hereof: (a) the Stipulation filed with the Court on April 7, 2023; and (b) the Notice and the Summary Notice, both of which were filed with the Court on June 26, 2023.

## II.   STANDARD OF REVIEW

### A.  Settlement Approval

Federal Rule of Civil Procedure 23(e) requires that "[t]he claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e); *see D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) ("Under Federal Rule of Civil Procedure 23, a class action cannot be settled without the approval of the District Court.") (citing Fed. R. Civ. P. 23(e)).

Courts may approve class action settlements "only after a hearing and only on finding that [the proposed settlement] is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). To determine whether the proposed settlement is fair, reasonable, and adequate, Federal Rule of Civil Procedure 23(e) provides that courts should consider whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

*Id*. In deciding whether the compromise is fair, reasonable, and adequate, the court must consider both "the substantive terms of the settlement" and whether "the negotiating process by which the

5

settlement was reached" shows that "the compromise [is] the result of arm's-length negotiations." *Weinberger v. Kendrick*, 698 F.2d 61, 74 (2d Cir. 1982).

### B. Attorney's fees

With respect to attorneys' fee awards, courts in the Second Circuit use one of two different methods to analyze their reasonableness. *Goldberger v. Integrated Res.*, 209 F.3d 43, 50 (2d Cir. 2000) ("In sum, we hold that both the lodestar and the percentage of the fund methods are available to district judges in calculating attorneys' fees in common fund cases."); *see also McDaniel v. County. of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010) ("[I]t remains the law in this Circuit that courts may award attorneys' fees in common fund cases under either the 'lodestar' method or the 'percentage of the fund' method.") (internal quotation marks omitted).

The Second Circuit has also recognized the use of the lodestar "as a baseline even if the percentage method is eventually chosen" and "encourage[d] the practice of requiring documentation of hours as a 'cross check' on the reasonableness of the requested percentage." *Goldberger*, 209 F.3d at 50 (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 820 (3d Cir. 1995)); *see also In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 353 (S.D.N.Y. 2014) ("The lodestar cross-check works best as a sanity check to ensure that an otherwise reasonable percentage fee would not lead to a windfall.").

"Irrespective of which method is used, the '*Goldberger* factors' ultimately determine the reasonableness" of an attorney's fee award in a class action settlement. *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005) (hereafter, "*Visa U.S.A.*"). The six factors include: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . . ; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Id*. (citing *Goldberger*, 209

F.3d at 50).

## III.   DISCUSSION

As a preliminary matter, this Court has jurisdiction over the subject matter of the Action, and all matters relating to the Settlement, as well as personal jurisdiction over all of the Parties and each of the Settlement Class Members. *See Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning*, 578 U.S. 374, 380 (2016) ("Like the Third Circuit, we read § 27 as conferring exclusive federal jurisdiction of the same suits as "aris[e] under" the Exchange Act pursuant to the general federal question statute." (citing 28 U.S.C. § 1331)); *In re Bristol-Myers Squibb Derivative Litig.*, No. 02 Civ. 8571 (LAP), 2007 WL 959081, at *6 (S.D.N.Y. Mar. 30, 2007) ("[D]efendant . . . is subject to personal jurisdiction in this District based on its substantial operations within this District."); *Messinger v. United Canso Oil & Gas Ltd.*, 80 F.R.D. 730, 734 (D. Conn. 1978) ("Unlike the truly adverse claims stated against 'real' defendants . . . the naming of the derivative corporation as a party defendant raises no potentially harmful consequences for the corporation, because plaintiff is acting solely for the corporation's benefit. Due process is therefore satisfied so long as the corporation has notice of the suit.").

As outlined below, the Court finds that the proposed Settlement is fair, reasonable, adequate, and in the best interest of the class. The Court further finds the Settlement to be the product of extensive arm's length negotiations conducted by highly experienced counsel.

The Court therefore certifies the Settlement Class and approves the proposed Settlement.

### A.  Notice

"For any class certified under Rule 23(b)(3)—or upon ordering notice under Rule 23(e)(1) to a class proposed to be certified for purposes of settlement under Rule 23(b)(3)—the

court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

To satisfy due process, class notice should be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *In re Prudential Sec. Inc. Ltd. Partnerships Litig.*, 164 F.R.D. 362, 368 (S.D.N.Y. 1996) (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)), *aff'd*, 107 F.3d 3 (2d Cir. 1996). In the Second Circuit, a settlement notice must also "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Visa U.S.A.*, 396 F.3d at 114 (internal citation and quotation marks omitted).

Accordingly, when the Court ordered notice to the proposed Settlement Class, it directed Notice be disseminated to the Settlement Class, and approved the proposed Notice, Claim Form, and Summary Notice, as well as the comprehensive notice program agreed to by the Parties. Preliminary Approval Order at 3–6.

The Court finds that the Parties implemented the Notice program, consistent with the terms of the Court's Preliminary Approval Order. More specifically, the Court-approved Notice includes all the information required by Federal Rule of Civil Procedure 23(c)(2)(B) and the PSLRA, 15 U.S.C. § 78u-4(a)(7), including: (i) an explanation of the nature of the Action and the claims asserted; (ii) the definition of the Class; (iii) the amount of the Settlement; (iv) a description of the Plan of Allocation; (v) an explanation of the reasons why the Parties are proposing the Settlement; (vi) a statement indicating the attorneys' fees and costs that will be sought; (vii) a description of Class Members' right to optout of the Class or to object to the

Settlement, the Plan of Allocation, or the requested attorneys' fees or expenses; and (viii) notice of the binding effect of a judgment on Class Members. Preliminary Approval Order at 3–6.

This Notice program therefore both satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process, and provided the best notice practicable under the circumstances. *See In re Frontier Commc'ns Corp.*, No. 3:17-cv-1617 (VAB), 2022 WL 4080324, at *10 (D. Conn. May 20, 2022) (finding that [a] similar notice program in a securities class action "satisfied the requirements of Rule 23 . . . and due process, and provided the best notice practicable under the circumstances").

### B.  Final Approval of the Terms of the Settlement

"In determining whether a settlement is fair, reasonable, and adequate, the District Court examines the 'negotiating process leading up to the settlement[, *i.e.,* procedural fairness,] as well as the settlement's substantive terms[, *i.e.,* substantive fairness].'" *McReynolds v. Richards-Cantave*, 588 F.3d 790, 803–04 (2d Cir. 2009) (quoting *D'Amato*, 236 F.3d at 85) (alterations in *McReynolds*).

First, the Court "must review the negotiating process leading up to the settlement for procedural fairness, to ensure that the settlement resulted from an arm's-length, good faith negotiation between experienced and skilled litigators." *Charron v. Wiener*, 731 F.3d 241, 247 (2d Cir. 2013) (first citing *McReynolds*, 588 F.3d at 803–04; and then citing *D'Amato*, 236 F.3d at 85). "A 'presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.'" *Visa U.S.A.*, 396 F.3d at 116 (quoting MANUAL FOR COMPLEX LITIGATION, Third § 30.42 (1995)).

Here, the Court finds that presumption is met.

The Parties have been litigating this case since November 2018, through an appeal, several motions to dismiss, a global pandemic, and have been involved in arm's-length negotiations since on or about Summer of 2022. Mot. at 8–10. The Parties engaged in private mediation and held full-day mediation sessions in July 2022 and December 2022. *Id.* at 8; Decl. of Adam H. Wierzbowski ¶¶ 63, 65, ECF No. 240 ("Wierzbowski Decl."). The mediation process included mediation statements addressing liability and damages, and a presentation by Plaintiffs' counsel summarizing evidence gathered during discovery. Wierzbowski Decl. ¶¶ 62–65. That the negotiations included active participation by an experienced mediator supports finding that the Settlement is procedurally fair. *See, e.g.*, *D'Amato*, 236 F.3d at 85 (stating that a mediator's involvement in settlement negotiations "helps to ensure that proceedings were free of collusion and undue pressure").

Though fact discovery had not yet been completed when settlement discussions began, Lead Counsel had conducted extensive investigation into the alleged fraud claims, by conducting "an extensive investigation into the alleged fraud, including interviews with dozens of former employees of Synchrony, and a thorough review of publicly available information about Synchrony, including Securities and Exchange Commission ('SEC') filings, analyst reports, conference call transcripts, and news articles;" "conducting auxiliary litigation in the Western District of Arkansas and the U.S. Court of Appeals for the Eighth Circuit in an effort to obtain relevant information from a lawsuit between Synchrony and Walmart;" and "obtaining and analyzing nearly 300,000 pages of documents obtained from Defendants and non-parties," among other things. Wierzbowski Decl. ¶ 4. Lead Plaintiffs have thus "engaged in the discovery, necessary to effective representation of the class's interests." *Weinberger*, 698 F.2d at 74 (internal citation omitted).

Therefore, "meaningful" discovery has occurred and the presumption of procedural fairness has been met. *See, e.g.*, *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000) ("[W]hile no formal discovery was conducted in this case, plaintiffs were afforded several opportunities to extensively review records provided by the Austrian Banks . . . . Therefore the Settlement enjoys a presumption of [procedural] fairness."), *aff'd sub nom. D'Amato*, 236 F.3d at 85–86 (rejecting appellants' argument that counsel misrepresented the importance of the Austrian Banks' agreement to provide access to documents, and finding that "the District Court in this case examined the negotiation process with appropriate scrutiny"); *Ferrick v. Spotify USA Inc.*, No. 16-cv-8412 (AJN), 2018 WL 2324076, at *3 (S.D.N.Y. May 22, 2018) (finding the settlement entitled to presumption of procedural fairness where "settlement negotiations included the exchange of tens of millions of rows of Spotify's data and work by experts on both sides to evaluate the settlement value of the case"). *Cf. Plummer v. Chem. Bank*, 668 F.2d 654, 658 (2d Cir. 1982) ("Although negotiations in the instant case were conducted by undesignated class representatives without formal pretrial discovery, this, standing alone, did not preclude judicial approval.").

Also, as noted in this Court's prior Orders, Lead Counsel is a skilled law firm with significant experience in complex securities litigation. *See* Ruling on Class Cert. at 12. BLB&G has also been involved in the litigation as Lead Counsel for more than four years, and therefore the Court also affords "'great weight'" to Lead Counsel's recommendation, in light of their being "most closely acquainted with the facts of the underlying litigation." *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998) (quoting *Chatelain v. Prudential-Bache Sec., Inc.*, 805 F. Supp. 209, 212 (S.D.N.Y. 1992)).

The Court also notes that the settlement has been endorsed by APG, a "sophisticated

institutional investor," and so, the settlement is "'entitled to an even greater presumption of reasonableness[.]'" *In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695 (CM), 2007 WL 4115809, at *5 (S.D.N.Y. Nov. 7, 2007) (quoting *In re EVCI Career Colleges Holding Corp. Sec. Litig.,* 2007 U.S. Dist. LEXIS 57918, at *12, 2007 WL 2230177 (S.D.N.Y. July 27, 2007)).

Next, "[t]he court must also evaluate substantive fairness considering the nine *Grinnell* factors set forth in *Detroit v. Grinnell Corp.*: '(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.'" *Charron*, 731 F.3d at 247 (first quoting *Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974); and then citing *McReynolds*, 588 F.3d at 804). "A court need not find that every factor militates in favor of a finding of fairness; rather, a court 'consider[s] the totality of these factors in light of the particular circumstances.'" *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 246 F.R.D. 156, 167 (S.D.N.Y. 2007) (quoting *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 456 (S.D.N.Y. 2004)).

The Court makes the following findings and concludes that the balance of the *Grinnell* factors weighs in favor of approving the Settlement Agreement.

### i. Complexity, Expense, and Likely Duration of the Litigation

The first *Grinnell* factor requires the Court to consider the complexity, expense, and likely duration of the litigation. *Visa U.S.A.*, 396 F.3d at 117. "Most class actions are inherently

complex and settlement avoids the costs, delays and multitude of other problems associated with them" and courts therefore favor class action settlements. *In re Holocaust Litig.*, 80 F. Supp. 2d at 174.

Lead Counsel have already spent over 10,000 hours on this case over several years. Mot. for Att'ys' Fees at 2. "Absent a settlement, [litigation] costs will only escalate as a result of discovery proceedings, motion practice, trials, and likely appeals." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y.), *aff'd* 117 F.3d 721 (2d Cir. 1997) (per curiam). In fact, before the Stipulation was agreed to, the parties completed a full appeal to the Second Circuit and subsequent motion practice before this Court.

Accordingly, the first *Grinnell* factor supports approval of the settlement.

### ii. Reaction of the Class to the Settlement

"One of the factors most courts consider is the reaction of the absent class members, specifically the quality and quantity of any objections and the quantity of class members who opt out." 4 NEWBERG ON CLASS ACTIONS § 13:54 (5th ed.). Courts may consider two reactions: opt outs and objections. *Id.* "If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement." *Visa U.S.A.*, 396 F.3d at 118 (quoting 4 NEWBERG § 11.41, at 108); *see also In re AOL Time Warner*, No. MDL 1500, 02 Civ. 5575 (SWK), 2006 WL 903236, at *9 (S.D.N.Y. Apr. 6, 2006) ("The reaction of the class is generally gauged by reference to the extent of objection to the settlement.").

Here, there was only one objection to the settlement and only three persons, none of whom are institutional investors, have validly opted out, out of 160,000 potential Settlement Class Members. Reply at 1–2. This reaction strongly supports approval. *See Visa U.S.A.*, 396 F.3d at 118 (noting eighteen objections out of five million individuals notified of settlement and

stating that "[i]f only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement") (quoting 4 NEWBERG § 11.41, at 108); *see also In re AOL Time Warner*, 2006 WL 903236, at *10 (finding that an opt-out rate of less than 0.2% of 4.7 million class members favored settlement); *Charron v. Pinnacle Group N.Y. LLC*, 874 F. Supp. 2d 179, 197 (S.D.N.Y. 2012) (approving settlement where "fewer than 1% of the tenants who received notice opted out of the lawsuit, and an even smaller percentage objected").

 Accordingly, the second *Grinnell* factor supports approval of the settlement.

   **iii. The Stage of the Proceedings and the Amount of Discovery Completed**

 "The stage of the proceedings and the amount of discovery completed at the time a Settlement is reached is relevant to the parties' knowledge of the strengths and weaknesses of the various claims in the case, and consequently affects the determination of the settlement's fairness." *In re PaineWebber*, 171 F.R.D. at 126 (citing *In re Milken & Assocs. Sec. Litig.*, 150 F.R.D. 46, 55–56 (S.D.N.Y. 1993)). However, "[t]o approve a proposed settlement, the Court need not find that the parties have engaged in extensive discovery." *In re Holocaust Litig.*, 80 F. Supp. 2d at 176 (citing *Plummer*, 668 F.2d at 658). "Instead, it is enough for the parties to have engaged in sufficient investigation of the facts to enable the Court to 'intelligently make . . . an appraisal' of the Settlement." *Id.* (quoting *Plummer*, 668 F.2d at 660; citing *Klein v. PDG Remediation, Inc.*, No. 95 Civ. 4954, 1999 WL 38179, at *2 (S.D.N.Y. Jan. 28, 1999)); *see also In re AOL Time Warner*, 2006 WL 903236, at *10 ("The relevant inquiry for this factor is whether the plaintiffs have obtained a sufficient understanding of the case to gauge the strengths and weaknesses of their claims and the adequacy of the settlement.").

 As discussed above, Lead Counsel has engaged in an extensive investigation of the facts. Moreover, Lead Counsel "consulted extensively with experts in financial economics and

conducted extensive research to analyze and understand the relevant law and facts as part of their briefing of the numerous issues raised in the Defendants' [two] motions to dismiss, and Plaintiffs' appeal to the Second Circuit." Mot. to Approve Settlement at 9–10; Wierzbowski Decl. ¶¶ 21, 25–26, 34–36, 59. Following the Second Circuit's mandate, "Plaintiffs conducted substantial fact discovery resulting in the production of approximately 300,000 pages of documents." Mot. to Approve Settlement at 10; Wierzbowski Decl. ¶¶ 41–56. Therefore, this discovery "is sufficient to provide a 'clear view of the strengths and weaknesses of their cases' and of the adequacy of the settlement.'" *In re Sturm, Ruger, & Co., Inc. Secs. Litig.*, No. 3:09cv1293 (VLB), 2012 WL 3589610, at *5 (D. Conn. Aug. 20, 2012) (quoting *Taft v. Ackermans*, No. 02 Civ. 7951 (PKL), 2007 WL 414493, at *6 (S.D.N.Y. Jan. 31, 2007)).

Accordingly, the Court finds the third *Grinnell* factor weighs in favor of approval.

### iv.   The Risks of Establishing Liability and Damages

"One of the Court's central inquiries when appraising a settlement is the likelihood that the class would prevail at trial in the face of the risks presented by further litigation." *In re AOL Time Warner*, 2006 WL 903236, at *11. In determining the risks of establishing liability and damages, courts need not "adjudicate the disputed issues or decide unsettled questions; rather, [courts] need only assess the risks of litigation against the certainty of recovery under the proposed settlement." *In re Global Crossing.*, 225 F.R.D. at 459 (citing *In re Holocaust Litig.*, 80 F. Supp. 2d at 177).

The Court already dismissed this case with prejudice, and the dismissal was affirmed in part and reversed in part on appeal by the Second Circuit. Moving forward, the Parties would have to establish liability—which includes proving that Defendants' statements were knowingly false or made with reckless disregard for its falsity— materiality, loss causation, and class-wide

damages.

As Lead Plaintiffs point out, their case hinges on their ability to prove the claim relating to Ms. Keane's single allegedly false January 19, 2018 comments. Mot. to Approve Settlement at 13; *see also* Wierzbowski Decl. ¶¶ 79–80. Defendants would have argued that Ms. Keane's statement was "off-the-cuff," that a reasonable investor would not find such a statement important, in part due to Synchrony's "multiple disclosures to investors during the relevant period," and that the alleged misstatement lacked the necessary scienter. Mot. to Approve Settlement at 13–14; Wierzbowski Decl. ¶¶ 79–83.

As it relates to class-wide damages, Defendants would have presented an expert "who would opine that the Class's damages were small or nonexistent," and Defendants would have also argued that any losses experienced were actually caused by "other news disclosed that day." Mot. to Approve Settlement at 14–15; Wierzbowski Decl. ¶¶ 86–90, 92.

Though the Court does not and need not predict how it would rule on the case, the difficulty of establishing all of the elements of Plaintiffs' claim is underscored by the Court's previous dismissal of the claims stemming from Defendants' alleged statements. *See In re Synchrony Fin. Sec. Litig.*, 450 F. Supp. 3d 127 (D. Conn. 2020) ("*Synchrony I*"); *In re Synchrony Fin. Sec. Litig.*, 988 F.3d 157, 161 (2d Cir. 2021) ("*Synchrony II*"); *In re Synchrony Fin. Sec. Litig.*, No. 3:18-cv-1818 (VAB), 2022 WL 427499 (D. Conn. Feb. 11, 2022) ("*Synchrony III*").

Regardless of the merits of the case, if it continued before this Court, "[l]itigation inherently involves risks." *In re PaineWebber*, 171 F.R.D. at 126; *see also In re Facebook Inc. IPO & Sec. Litig.*, MDL No. 12-2389, 2015 WL 6971424, at *5 (S.D.N.Y. Nov. 9, 2015) ("[D]amages would be subject to a battle of the experts, with the possibility that a jury could be

swayed by experts for Defendants, who could minimize or eliminate the amount [of] Plaintiffs'

losses. Under such circumstances, a settlement is generally favored over continued litigation.").

Accordingly, the fourth and fifth *Grinnell* factors weigh in favor of approval.

### v.   The Risks of Maintaining the Class Action Through Trial

"One of the factors most courts consider is how certain the court is that the class

certification requirements are met and maintainable." 4 NEWBERG § 13:51.

The Court previously certified the class based on Lead Plaintiffs' unopposed motion for

certification. Ruling on Class Cert. Therefore, this factor "is a minor consideration in this case"

because "[i]t is unlikely that [D]efendant would . . . move[] to defeat the class, and had

[D]efendant made such a motion, it likely would have failed." *Cinelli v. MCS Claim Servs., Inc.*,

236 F.R.D. 118, 122 (E.D.N.Y. 2006).

### vi.   Defendants' Ability to Withstand a Greater Judgment

Lead Plaintiffs "believe that Synchrony would have the ability to pay a judgment in

excess of the $34 million Settlement Amount." Mot. to Approve Settlement at 17. The Court

notes, however, that this factor "standing alone, does not suggest that the settlement is unfair,"

especially where the "other *Grinnell* factors weigh heavily in favor of settlement[.]" *D'Amato*,

236 F.3d at 86; *see also In re IMAX Sec. Litig.*, 283 F.R.D. 178, 191 (S.D.N.Y. 2012) (stating

that a "defendant is not required to empty its coffers before a settlement can be found adequate").

Therefore, given the application of the other *Grinnell* factors in this case, the Court need

not determine whether Defendants could have withstood a larger judgment, and may still

approve the settlement agreement. *Accord Kemp-DeLisser v. Saint Francis Hosp. & Med. Ctr.*,

No. 15-cv-1113 (VAB), 2016 WL 6542707, at *10 (D. Conn. Nov. 3, 2016) ("Thus, even if the

Defendants here could afford to pay more than the $107 million Settlement Amount, this does

not prevent the Court from approving this Settlement as fair and reasonable.").

Accordingly, the seventh factor also weighs in favor of approval.

### vii.  The Range of Reasonableness of the Settlement

The final *Grinnell* factors require examination of the "range of reasonableness" of the settlement "in light of the best possible recovery" and "in light of all the attendant risks of litigation." *Visa U.S.A.*, 396 F.3d at 117. Courts should "consider and weigh the nature of the claim, the possible defenses, the situation of the parties, and the exercise of business judgment in determining whether the proposed settlement is reasonable." *Grinnell*, 495 F.2d at 462.

Lead Plaintiffs' damages expert estimates that the maximum recoverable damages are approximately $211 to $305 million. Mot. to Approve Settlement at 16; Wierzbowski Decl. ¶ 95. The $34 million Settlement Amount represents 11% to 16% of the estimated maximum recoverable damages, which is higher than average for securities fraud class action settlements, and therefore, the Court concludes that the Settlement Amount is reasonable in light of the risks of litigation. *See Menkes v. Stolt-Nielsen S.A.*, 270 F.R.D. 80, 103 (D. Conn. 2010) (granting preliminary approval of settlement representing approximately 8% of maximum recoverable damages); *In re Canadian Superior Sec. Litig.*, No. 09 Civ. 10087 (SAS), 2011 WL 5830110, at *2 (S.D.N.Y. Nov. 16, 2011) (approving settlement representing 8.5% of maximum damages, which the court noted "exceed[s] the average recovery in shareholder litigation"); *In re China Sunergy Sec. Litig.*, No. 07 Civ. 7895 (DAB), 2011 WL 1899715, at *5 (S.D.N.Y. May 13, 2011) ("[A]verage settlement amounts in securities fraud class actions where investors sustained losses over the past decade . . . have ranged from 3% to 7% of the class members' estimated losses" (internal citation omitted)).

Accordingly, the eighth and ninth *Grinnell* factors weigh in favor of approval.

As a result, the *Grinnell* factors—taken as a whole—support finding the settlement substantively fair, reasonable, and adequate.

The Court therefore approves the Settlement Agreement and next considers the Plan of Allocation and the motion for attorney's fees and costs.

### C.  The Plan of Allocation

A plan for allocating settlement proceeds, like the settlement itself, should be approved if it is fair, reasonable, and adequate. *See In re IMAX*, 283 F.R.D. at 192. A plan of allocation is fair and reasonable as long as it has a "rational basis." *In re FLAG Telecom Holdings, Ltd. Secs. Litig.*, No. 02-CV-3400 (CM) (PED), 2010 WL 4537550, at *21 (S.D.N.Y. 2010); *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 497 (S.D.N.Y. 2009). Generally, a plan of allocation that reimburses class members based on the relative strength and value of their claims is reasonable. *See In re IMAX*, 283 F.R.D. at 192. In determining whether a plan of allocation is reasonable, courts give great weight to the opinion of experienced counsel. *See In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 163 (S.D.N.Y. 2011).

Lead Plaintiff's proposed Plan of Allocation was created by Lead Counsel "in consultation with Plaintiffs' damages expert and was set forth in full in the Notice mailed to potential Class Members." Mot. to Approve Settlement at 21; Villanova Decl. at 14–17. The Plan of Allocation includes a method to allocate the New Settlement Fund among Class Members who submit valid Claim Forms, based on the damages they suffered on their investments. Wierzbowski Decl. ¶¶ 106–07. In other words, Class Members who submit valid Claim Forms will be allocated funds on a *pro rata* basis based on the relative size of their claim. *Id.* ¶¶ 112–113. If funds remain after the initial *pro rata* distribution, there will be additional distributions to the Authorized Claimants. *Id.* ¶ 114. When the residual amount is too small for cost-effective re-

distribution, those funds will be donated to one or more non-sectarian, not-for-profit, 501(c)(3)

organizations recommended by Lead Counsel and approved by the Court. *Id.*

Therefore, the Court finds that Lead Plaintiff's propose Plan of Allocation is fair,

reasonable, and adequate.

### D.  Attorney's Fees

Under Federal Rule of Civil Procedure 23(h), "the court may award reasonable

attorney[s'] fees . . . that are authorized by law or by the parties' agreement." Fed. R. Civ. P.

23(h). Courts in the Second Circuit use one of two different methods to analyze the

reasonableness of attorneys' fees awards in class actions that result in a common fund settlement.

*Goldberger*, 209 F.3d at 50 ("In sum, we hold that both the lodestar and the percentage of the

fund methods are available to district judges in calculating attorneys' fees in common fund

cases."); *see also McDaniel*, 595 F.3d at 417 ("[I]t remains the law in this Circuit that courts may

award attorneys' fees in common fund cases under either the 'lodestar' method or the

'percentage of the fund' method." (internal quotation marks omitted)). The first method, the

"lodestar method," begins with the multiplication of "the reasonable hours billed by a reasonable

hourly rate." *In re Colgate-Palmolive*, 36 F. Supp. 3d at 347–48. The district court may then

"adjust the multiplier based on other factors such as the risk of the litigation or the performance

of the attorneys." *Id.* at 348. The second method, the "percentage of the fund" method, sets a fee

that is "a reasonable percentage of the total value of the settlement fund created for the class." *Id.*

The general trend in this Circuit favors using the percentage method in common fund cases. *See*

*Visa, U.S.A.*, 396 F.3d at 121 ("The trend in this Circuit is toward the percentage method[.]"

(internal citations omitted)).

The Second Circuit has also recognized the use of the lodestar "as a baseline even if the

20

percentage method is eventually chosen" and "encourage[d] the practice of requiring documentation of hours as a 'cross check' on the reasonableness of the requested percentage." *Goldberger*, 209 F.3d at 50 (quoting *In re Gen. Motors Corp.*, 55 F.3d at 820); *see also In re Colgate-Palmolive*, 36 F. Supp. 3d at 353 ("The lodestar cross-check works best as a sanity check to ensure that an otherwise reasonable percentage fee would not lead to a windfall."). As a result, many courts adopt this combined approach. *See, e.g.*, *Ferrick*, 2018 WL 2324076, at *10 ("When the lodestar method is applied here to cross-check the reasonableness of the requested percentage, it becomes apparent that the requested award is too high."); *Kemp-DeLisser*, 2016 WL 6542707, at *17 ("That the proposed fee award represents a 2.77 multiplier compared to Class Counsel's lodestar supports the reasonableness of the award.").

"Irrespective of which method is used, the '*Goldberger* factors' ultimately determine the reasonableness" of an attorney's fee award in a class action settlement. *Visa, U.S.A.*, 396 F.3d at 121. The six factors include: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . . ; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Id.* (citing *Goldberger*, 209 F.3d at 50).

Here, Lead Counsel seek an attorneys' fee award of thirteen percent of the Settlement Amount.

The Court finds that the first four *Goldberger* factors weigh in favor of awarding the requested attorneys' fees, for the reasons discussed above. Most notably, Lead Counsel have spent over 10,000 hours of attorney and professional staff time on this case, over several years. Wierzbowski Decl. ¶ 122. These hours include time spent conducting extensive fact discovery, researching and drafting, participating in motion practice, and litigating an appeal. Att'ys' Fees

Mem. at 2–3; Wierzbowski Decl. ¶¶ 123–124. The Court also again notes that the risk of

litigation has been significant, in light of the prior dismissal and appeal, and the open questions

about liability and damages. Wierzbowski Decl. ¶¶ 79–83; *see also See In re FLAG Telecom*,

2010 WL 4537550, at *27 ("Courts in the Second Circuit have recognized that the risk

associated with a case undertaken on a contingent fee basis is an important factor in determining

an appropriate fee award.").

As to the fifth factor, the Court finds that the requested amount does not confer on the

attorneys an "unwarranted windfall." *Goldberger*, 209 F.3d at 49 ("The express goal of the

*Grinnell* opinions was to prevent unwarranted windfalls for attorneys.").

The Court finds that the requested fee is reasonable under the percentage-of-the-fund

method of calculating attorneys' fees. The requested percentage is well within the range of

percentages awarded in the Second Circuit in comparable class action. *See, e.g.*, *In re

Priceline.com, Inc., Sec. Litig.*, No. 3:00-CV-1884 (AVC), 2007 WL 2115592, at *5 (D. Conn.

July 20, 2007) (approving attorneys' fee award of 30% of the settlement fund and listing other

Second Circuit cases that approved between 25–33 1/3% of the settlement fund in attorneys'

fee).

In any event, the Court has reviewed the lodestar crosscheck of the fees and expenses

award requested. *Goldberger*, 209 F.3d at 50 ("Indeed, we encourage the practice of requiring

documentation of hours as a 'cross check' on the reasonableness of the requested percentage."

(quoting *In re Gen. Motors Corp.*, 55 F.3d at 820); *see also In re Colgate-Palmolive*, 36 F. Supp.

3d at 353 ("The lodestar cross-check works best as a sanity check to ensure that an otherwise

reasonable percentage fee would not lead to a windfall."). Having reviewed the lodestar

crosscheck calculation, the Court concludes that a negative lodestar multiplier of 0.7 is

reasonable because positive multipliers are frequently awarded in comparable securities class actions. Wierzbowski Decl. ¶ 122; *see also Visa, U.S.A.*, 396 F.3d at 123 (affirming a multiplier of 3.5); *Bozak v. FedEx Ground Package Sys., Inc.*, No. 3:11-cv-00738-RNC, 2014 WL 3778211, at *7 (D. Conn. July 31, 2014) (collecting cases that have approved awards with a lodestar multiplier of up to eight times the lodestar).

The Court also finds that public policy favors this award because it will continue to encourage attorneys to take these types of cases on a contingency basis and further encourage enforcement of securities laws. *See In re Priceline.com, Inc.*, 2007 WL 2115592, at *5 ("The fee fairly compensates competent counsel in a complex securities case and helps to perpetuate the availability of skilled counsel for future cases of this nature.").

Accordingly, Lead Counsel are hereby awarded attorneys' fees in the amount of 13% of the Settlement Amount, a fair and reasonable sum after considering the factors outlined in *Goldberger*.

### E.  Litigation Expenses

Under Federal Rule of Civil Procedure 23(h), the court may also award "nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). "Courts may reimburse counsel for expenses reasonably and necessarily incurred in litigating a class action." *Kemp-DeLisser*, 2016 WL 6542707, at *18.

Plaintiffs seek reimbursement for $566,401.13 in litigation costs. *See* Mot. for Att'y's Fees at 1, 22. These fees include costs and fees for Plaintiffs' experts, on-line legal and factual research, photocopying, and filing fees, Wierzbowski Decl. ¶¶ 134, 136–145, all of which Lead Counsel contend were "reasonable in amount and necessary to the prosecution of the action." Mot. for Att'y's Fees at 22; Wierzbowski Decl. ¶¶ 134–142. Moreover, Plaintiffs' Counsel took

steps to minimize expenses whenever practicable, without jeopardizing its prosecution of the case. Wierzbowski Decl. ¶ 136.

The Notice informed Class Members that Class Counsel will ask the Court for payment for Litigation Expenses in an amount not to exceed $750,000.00. Ex. 2 to Mot. to Approve Settlement at 9, ECF No. 240-2.

Having reviewed the breakdowns of litigation costs submitted by Lead Counsel, the Court agrees with Lead Counsel that the costs here were reasonably and necessarily incurred in litigating this class action. *See, e.g.*, *Kiefer v. Moran Foods, LLC*, 2014 WL 3882504, at *10 (D. Conn. Aug. 5, 2014) (awarding reimbursement of litigation expenses that included court and process server fees, postage and courier fees, transportation, working meals, photocopies, electronic research, and expert fees).

Accordingly, the Court awards Lead Counsel $566,401.13 in litigation expenses.

No proceedings or court order with respect to the award of attorneys' fees and litigation expenses to Shareholders' Counsel, shall in any way disturb or affect this Ruling and Order (including precluding the subsequent Judgment from being Final or otherwise being entitled to preclusive effect), and any such proceedings or court order shall be considered separate from this Ruling and Order.

### F. Costs

Under the PSLRA, an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" may be made to "any representative party serving on behalf of a class." 15 U.S.C. § 78u-4(a)(4). "Courts in this Circuit routinely award such costs and expenses both to reimburse the named plaintiffs for expenses incurred through their involvement with the action and lost wages, as well as to provide an incentive for such

plaintiffs to remain involved in the litigation and to incur such expenses in the first place."
*Christine Asia Co. v. Yun Ma*, No. 1:15-md-02631 (CM) (SDA), 2019 WL 5257534, at *20
(S.D.N.Y. Oct. 16, 2019) (collecting cases).

Plaintiffs request reimbursement in the amount of $48,700 based on the value of the time
employees of APG Management spent on behalf of the Class, including time spent
communicating and strategizing with Plaintiffs' Counsel, reviewing pleadings and briefs,
collecting documents for production, discussing the action with its investment managers from
whom Defendant requested documents, and consulting with counsel during the course of
settlement negotiations. *See* Ex. 1 to Mot. for Att'y's Fees at ¶¶ 5, 9–11, ECF No. 240-1 ("van
Lidth de Jeude Decl.").

The Court finds that the amount requested is reasonable and justified under the PSLRA
based on Plaintiffs' active involvement. *See In re Bank of Am. Corp.* 772 F.3d at 132–33
(affirming award of over $450,000 to representative plaintiffs for time spent by their employees
on the action); *In re FLAG Telecom Holdings*, 2010 WL 4537550, at *31 (approving award of
$100,000 to Lead Plaintiff for time spent on the litigation); *Christine Asia Co.,* 2019 WL
5257534, at *8, *20 (granting PSLRA awards totaling $62,500 to lead plaintiffs for their
"substantial time and effort [devoted] to prosecuting [the] action, including preparing for and
being deposed by Defendants, reviewing pleadings and briefs, assisting with discovery
responses, collecting documents for production, and evaluating and approving the settlement").

Accordingly, the Court awards Plaintiffs $48,700 in costs.

### G. Objection to the Settlement, Proposed Plan of Allocation, and Attorneys' Fees and Litigation Expenses

On July 6, 2023, Ms. Wheeler filed the only objection to the proposed Settlement stating

only that she "do[es] not agree to the terms" without specifying which terms and why she objects

to them. Wheeler Obj. Moreover, Ms. Wheeler did not provide any information demonstrating

her membership in the Class. *Id.*

The Court finds that there is no reason that the Settlement should be denied based on Ms.

Wheeler's objection. *See In re Facebook, Inc.*, 343 F. Supp. 3d at 411 (rejecting objection that

did not articulate a basis for the objection), *aff'd sub nom. In re Facebook, Inc.*, 822 F. App'x 40

(2d Cir. 2020).

## IV.   CONCLUSION

For the reasons explained above, upon reviewing the Stipulation and all of the filings, and

following proceedings held in connection with the Settlement, including a fairness hearing held

on July 31, 2023, the Court **GRANTS** the motion for final approval of the settlement and plan of

allocation and **GRANTS** the motion for attorney's fees and expenses. The Court **FINDS,**

**CONCLUDES,** and **ORDERS** as follows:

(1) Only the following three individuals, entities, or organizations identified by Lead

Counsel as having opted-out of the Settlement Class, *see* Ex. 1 to Reply at 5, ECF No.

241-1, have timely and properly excluded themselves from the Settlement Class and,

therefore, are not members of the Settlement Class, and are not bound by the terms of

the Settlement Agreement, this Ruling and Order, or the associated Judgment[4]:

| Name | City, State |
|---|---|
| 1.   Ryan J. Cap | Chicago, IL |

---

[4] Lead Plaintiffs did not list Ms. Wheeler, the sole objector in the case, as one of the three individuals to have opted out of the settlement. Proposed Order at 11–14, ECF No. 211 (May 10, 2022). The Court notes that Ms. Wheeler's objection does not provide any basis to establish her membership in the Class and therefore does not comply with the terms set out in the Notice for submitting a claim or objection. Wheeler Obj.; Ex. 2 to Mot. to Approve Settlement at 16, 25–32, ECF No. 240-2.

    2.   John W. Harrison                    Gambrills, MD

    3.   Timothy S. Truesdell             Mt. Pleasant, SC

(2) Accordingly, the Action and all of the claims asserted against Defendants in the Action by Plaintiffs and Class Members are hereby dismissed with prejudice as to all Defendants. The Parties shall bear their own costs and expenses, except as otherwise expressly provided in the Stipulation.

(3) The terms of the Stipulation and of this Ruling and Order shall be forever binding on Defendants, Plaintiffs, and all Class Members (regardless of whether or not any individual Class Member submits a Claim Form or seeks or obtains a distribution from the Net Settlement Fund), as well as their respective successors and assigns. The persons and entities listed above hereto are excluded from the Class based on their own request and are not bound by the terms of the Stipulation or this Ruling and Order.

(4) The Releases set forth in paragraphs 4 and 5 of the Stipulation, together with the definitions contained in paragraph 1 of the Stipulation relating thereto, are expressly incorporated herein in all respects. The Releases are effective as of the Effective Date. Accordingly, this Court orders that:

    a.   Without further action by anyone, and subject to paragraph 8 below, upon the Effective Date of the Settlement, Plaintiffs and each of the Class Members, on behalf of themselves, and their respective heirs, executors, administrators, predecessors, successors, and assigns, in their capacities as such, shall be deemed to have, and by operation of law and of this Ruling and Order shall have, fully, finally, and forever compromised, settled,

released, resolved, relinquished, waived, and discharged any or all Released Plaintiffs' Claims against Defendants and the other Defendants' Releasees, and shall forever be barred and enjoined from prosecuting or otherwise pursuing, whether directly or in any other capacity, any or all of the Released Plaintiffs' Claims against any of the Defendants' Releasees.

b. Without further action by anyone, and subject to paragraph 8 below, upon the Effective Date of the Settlement, Defendants, on behalf of themselves, and their respective heirs, executors, administrators, predecessors, successors, and assigns, in their capacities as such, shall be deemed to have, and by operation of law and of this Judgment shall have, fully, finally, and forever compromised, settled, released, resolved, relinquished, waived, and discharged any or all Released Defendants' Claims against Plaintiffs and the other Plaintiffs' Releasees, and shall forever be barred and enjoined from prosecuting or otherwise pursuing, whether directly or in any other capacity, any or all of the Released Defendants' Claims against any of the Plaintiffs' Releasees. This Release shall not apply to any person or entity listed above.

(5) Notwithstanding paragraphs (4)a–b above, nothing in this Ruling and Order shall bar any action by any of the Parties to enforce or effectuate the terms of the Stipulation or this Ruling and Order.

(6) The Court finds and concludes that the Parties and their respective counsel have complied in all respects with the requirements of Rule 11 of the Federal Rules of Civil Procedure in connection with the institution, prosecution, defense, and settlement of the Action.

28

(7) Neither this Ruling and Order; the Memorandum of Understanding; the Stipulation, including the exhibits thereto and the Plan of Allocation contained therein (or any other plan of allocation that may be approved by the Court); the Supplemental Agreement; the negotiations leading to the execution of the Memorandum of Understanding, the Stipulation, and the Supplemental Agreement; nor any proceedings taken under or in connection with the Memorandum of Understanding, the Stipulation, the Supplemental Agreement, and/or the approval of the Settlement (including any arguments proffered in connection therewith):

    a.  shall be offered against any of the Defendants' Releasees as evidence of, or construed as, or deemed to be evidence of any presumption, concession, or admission by any of the Defendants' Releasees with respect to the truth of any fact alleged by Plaintiffs or the validity of any claim that was or could have been asserted or the deficiency of any defense that has been or could have been asserted in this Action or in any other litigation, or of any liability, negligence, fault, or other wrongdoing of any kind of any of the Defendants' Releasees, or in any way referred to for any other reason as against any of the Defendants' Releasees, in any arbitration proceeding or other civil, criminal, or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of the Stipulation;

    b.  shall be offered against any of the Plaintiffs' Releasees, as evidence of, or construed as, or deemed to be evidence of any presumption, concession, or admission by any of the Plaintiffs' Releasees that any of their claims are without merit, that any of the Defendants' Releasees had meritorious

defenses, or that damages recoverable under the Complaint would not have exceeded the Settlement Amount, or with respect to any liability, negligence, fault, or wrongdoing of any kind, or in any way referred to for any other reason as against any of the Plaintiffs' Releasees, in any arbitration proceeding or other civil, criminal, or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of the Stipulation; or

   c.   shall be construed against any of the Releasees as an admission, concession, or presumption that the consideration to be given hereunder represents the amount which could be or would have been recovered after trial;

provided, however, that the Parties and the Releasees and their respective counsel may refer to this Ruling and Order and the Stipulation to effectuate the protections from liability granted hereunder and thereunder or otherwise to enforce the terms of the Settlement.

(8) Without affecting the finality of this Ruling and Order in any way, this Court retains continuing and exclusive jurisdiction over: (a) the Parties for purposes of the administration, interpretation, implementation, and enforcement of the Settlement; (b) the disposition of the Settlement Fund; (c) any motion to approve the Class Distribution Order; and (d) the Class Members for all matters relating to the Action.

(9) Without further approval from the Court, Plaintiffs and Defendants are hereby authorized to agree to and adopt such amendments or modifications of the Stipulation or any exhibits attached thereto to effectuate the Settlement that: (a) are not materially inconsistent with this Judgment; and (b) do not materially limit the

rights of Class Members in connection with the Settlement. Without further order of the Court, Plaintiffs and Defendants may agree to reasonable extensions of time to carry out any provisions of the Settlement.

(10)   If the Settlement is terminated as provided in the Stipulation or the Effective Date of the Settlement otherwise fails to occur, this Judgment shall be vacated, rendered null and void, and be of no further force and effect, except as otherwise provided by the Stipulation, and this Judgment shall be without prejudice to the rights of Plaintiffs, Class Members, and Defendants, and the Parties shall revert to their respective positions in the Action immediately before the execution of the Parties' Memorandum of Understanding on January 17, 2023, as provided in the Stipulation.

The Clerk of Court is respectfully directed to enter judgment, consistent with this Ruling and Order, and to close this case.

SO ORDERED at Bridgeport, Connecticut, this 4th day of August, 2023.

   /s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE